**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GEORGE D. MANDERBACH, INC. d/b/a
MANDERBACH FORD, DLR AUTO
GROUP LLC, SMITH COLLISION
CENTER, and BROADWAY PRECISION
COLLISION, on Behalf of All Others
Similarly Situated,

        Plaintiffs,

        v.

CDK Global, LLC,

        Defendant.

Case No. 1:24-cv-05924

Hon. Jeffrey I. Cummings

---

**MEMORANDUM OF LAW IN SUPPORT OF CDK GLOBAL, LLC'S
MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

---

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ...................................................................................................... ii

Table of Authorities ........................................................................................................... iii

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD ......................................................................................................... 5

ARGUMENTS .................................................................................................................... 6

I.      The Negligence Claim Fails (Count I) ................................................................... 6

      A.      Plaintiffs Fail to Plausibly Plead that CDK Owed Them a Duty of Care ........................................................................................................... 6

      B.      Plaintiffs Fail to Sufficiently Plead Breach of Duty ............................... 12

      C.      The Economic-Loss Rule Bars Plaintiffs' Claim ................................... 12

II.     The Unjust Enrichment Claim Fails (Count III) ................................................. 15

III.    The Breach of Contract Claim Must Be Dismissed (Count II) ............................ 17

IV.    CDK Reserves Its Right to Compel Arbitration and Invoke Any Class Waiver ....... 17

CONCLUSION ................................................................................................................. 18

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Admiral Indem. Co. v. Otis Elevator Co.*,
2021 WL 4306145 (N.D. Ill. Sept. 22, 2021) ........................................................14

*Anderson Elec, Inc. v. Ledbetter Erection Corp.*,
503 N.E.2d 246 (Ill. 1986) .....................................................................................13

*Anderson v. Chicago Transit Auth.*,
131 N.E.3d 1245 (Ill. App. Ct. 2019) .......................................................................8

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) .....................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................5

*Bilek v. Fed. Ins. Co.*,
8 F.4th 581 (7th Cir. 2021) .......................................................................................5

*In re CDK Global Data Security Consumer Litigation*,
No. 1:24-cv-05221 ........................................................................................ *passim*

*In re Chicago Flood Litig.*,
680 N.E.2d 265 (Ill. 1997) ...............................................................................13, 14

*Clifford v. Crop Prod. Servs. Inc.*,
627 F.3d 268 (7th Cir. 2010) ....................................................................................6

*Cmty. Bank of Trenton v. Schnuck Markets, Inc.*,
887 F.3d 803 (7th Cir. 2018) ..................................................................................13

*Coatney v. Ancestry.com DNA, LLC*,
93 F.4th 1014 (7th Cir. 2024) ............................................................................6, 17

*Della Parola Cap. Mgmt. LLC v. Blaze Portfolio Sys.*,
LLC 2021 WL 3674613 (N.D. Ill. Aug. 19, 2021) ..................................................6

*Flaherty v. Wells Fargo Bank Nat'l Ass'n*,
623 F. Supp. 3d 1124 (D. Nev. 2022) .......................................................................9

*Flores v. Aon Corp.*,
242 N.E.3d 340 (Ill. App. Ct. 2023) ...............................................................7, 8, 14

*Formula Sports Cars, Inc. v. CDK Global LLC*,
No. 1:24-cv-08120 ................................................................................................5

*Fowler Buick GMC Inc. v. CDK Global, LLC*,
No. 1:24-cv-05643 ................................................................................................5

*Fullerton v. Corelle Brands, LLC*,
2019 WL 4750039 ..............................................................................................17

*Hankins v. Alpha Kappa Alpha Sorority, Inc.*,
447 F. Supp. 3d 672 (N.D. Ill. 2020) ...................................................................9

*Hayes Mech., Inc. v. First Indus., L.P.*,
812 N.E.2d 419 (Ill. App. Ct. 2004) ...............................................................6, 15

*Holler v. Cinemark USA, Inc.*,
185 F. Supp. 2d 1242 (D. Kan. 2002) .................................................................10

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
545 N.E.2d 672 (Ill. 1989) .................................................................................16

*Hughes Masonry Co., Inc. v. Greater Clark Cnty. Sch. Bldg. Corp.*,
659 F.2d 836 (7th Cir. 1981) ..............................................................................17

*Jay Kay Collision Center, Inc. v. CDK Global, LLC*,
No. 1:24-cv-05313 ................................................................................................5

*Knight v. Enbridge Pipelines (FSP) L.L.C.*,
759 F.3d 675 (7th Cir. 2014) ................................................................................6

*Kuhns v. Scottrade, Inc.*,
868 F.3d 711 (8th Cir. 2017) ..............................................................................12

*Oyoque v. DePaul Univ.*,
520 F. Supp. 3d 1058 (N.D. Ill. 2021) ...........................................................5, 15

*Pearson v. Walmart Inc.*,
2021 WL 4477816 (N.D. Ill. Sept. 30, 2021) ......................................................9

*Philadelphia Indem. Ins. Co. v. Bellin Mem'l Hosp., Inc.*,
2023 WL 6388208 (N.D. Ill. Sept. 29, 2023) ......................................................7

*Platt v. Brown*,
872 F.3d 848 (7th Cir. 2017) ..............................................................................16

*Rehabcare Grp. E., Inc. v. CC Care, LLC*,
2016 WL 2595108 (N.D. Ill. May 4, 2016) ........................................................16

*Roberson ex rel. Roberson v. Novartis Pharm. Corp.*,
    2011 WL 1740137 (N.D. Ill. May 5, 2011) ...................................................................10

*Rudy v. Fam. Dollar Stores, Inc.*,
    583 F. Supp. 3d 1149 (N.D. Ill. 2022) .......................................................................15

*Simpkins v. CSX Transp., Inc.*,
    965 N.E.2d 1092 (Ill. 2012) .......................................................................................8

*Solar Micronics, Inc. v. Reddy*,
    2023 WL 4564566 (N.D. Ill. July 17, 2023) ...............................................................16

*Stewart v. Jeffreys*,
    2021 WL 1379420 (S.D. Ill. Apr. 12, 2021) ...............................................................11

*In re SuperValu, Inc.*,
    925 F.3d 955 (8th Cir. 2019) ....................................................................................11

*Todd v. Societe Bic, S.A.*,
    21 F.3d 1402 (7th Cir. 1994) ....................................................................................7

*In re Waste Mgmt. Data Breach Litig.*,
    2022 WL 561734 (S.D.N.Y. Feb. 24, 2022) ...............................................................12

**Statutes**

815 ILCS 530/5 ..........................................................................................................7, 14

**INTRODUCTION**

CDK Global, LLC provides software products and services to car dealerships nationwide. In June 2024, CDK was the victim of a ransomware attack on certain of its systems. To protect its systems and its customers, CDK proactively and temporarily took its applications and third-party integrations offline. Once the incident was resolved, CDK moved quickly to restore major applications and third-party integrations, which were back online within a matter of days or weeks. CDK's investigation did not uncover a compromise of dealer, dealer employee, or consumer personally identifiable information that would give rise to any notification obligations.

Plaintiffs DLR Auto Group, LLC, Smith Collision Center, and Broadway Precision Collision (collectively, the "plaintiffs") are not CDK customers or even car dealerships.[1] Instead, they are an automobile broker (DLR) and two vehicle-repair shops (Smith and Broadway) who are several steps removed from CDK. Automobile brokers (like DLR) facilitate car sales between a car buyer and dealership, and vehicle repair shops (like Smith and Broadway) buy parts from certain unspecified dealers. In neither case, however, do these entities deal with *CDK*. Unsurprisingly, then, the complaint has no allegations showing that plaintiffs had a single direct, or indirect, interaction with CDK or its services, or conferred any benefit on CDK.

Nevertheless, plaintiffs seek to recover damages for negligence and unjust enrichment, apparently relying on the theory that the cyberattack against CDK impacted plaintiffs' ability to purchase vehicles and order parts from *third parties* who *supposedly* use CDK services. Both claims fail as a matter of law because the connections (or lack thereof) between the plaintiffs and

---

[1] CDK does not address the claims of Manderbach Ford in this motion because the parties have agreed that the individual claims of Manderbach Ford should be severed and proceed to arbitration based on the enforceable arbitration clause within the Master Services Agreement between CDK and Manderbach Ford. (*See* ECF No. 28.)

1

CDK are simply too ill-defined and attenuated to give rise to these causes of action, and they should be dismissed.

This would leave only one remaining claim, breach of contract. Plaintiffs do not bring this claim on behalf of themselves or the class. Instead, this claim was brought by named-plaintiff Manderbach Ford on behalf of the class. Because the parties have requested that Manderbach Ford's claims be severed and proceed to arbitration, no one is left to represent the class as to this claim. It should also be dismissed.

## BACKGROUND

In mid-June 2024, CDK suffered a cyberattack on its systems. ECF No. 1 ¶ 3. Shortly thereafter, CDK proactively and temporarily took all applications offline. *Id.* ¶¶ 19, 21. CDK worked tirelessly to ensure containment of the criminal actor, restore impacted systems, conduct a third-party investigation and review of forensic data, and communicate with affected customers. CDK restored most services to affected customers by July 2, 2024, and confirmed by August 2024 that its investigation did not uncover a compromise of dealer, dealer employee, or consumer personally identifiable information that would give rise to any notification obligation.[2]

DLR is an automobile broker in Agoura Hills, California that "acts as an intermediary between the car buyer and the dealership." *Id.* ¶¶ 6, 42. To facilitate car sales, DLR negotiates with certain unspecified dealerships who themselves may (or may not) be customers of CDK. *See id.* Smith and Broadway are automotive-repair shops in Ada, Oklahoma. *Id.* ¶¶ 7–8. To repair

---

[2] *See generally* Henry, Jim, "*Dealership Software Comes Back Online After Cyberattack at CDK Global*," Forbes, July 3, 2024. Accessed August 26, 2024. https://www.forbes.com/sites/jimhenry/2024/07/03/dealership-software-comes-back-online-after-cyberattack-at-cdk-global/; Campbell, Jaelyn, "*CDK Global confirms no data breach in June cyberattacks*," CBT, August 27, 2024. https://www.cbtnews.com/cdk-global-confirms-no-data-breach-in-june-cyberattacks/.

vehicles, Smith and Broadway buy parts from certain unspecified dealerships who may (or may not) be customers of CDK. *See id.* ¶¶ 46, 49. The complaint asserts that the cyberattack caused supply-chain disruptions to vehicle sales and parts transactions. *See id.* ¶¶ 43, 46, 49.

Automobile brokers like DLR do not facilitate sales on behalf of CDK or purchase vehicles from CDK, and CDK does not sell vehicles; repair shops like Smith and Broadway do not buy parts from CDK, and CDK does not sell parts.[3] *See id.* ¶¶ 42, 46, 49. CDK provides software-management products and services to dealerships, which may (or may not) work with vehicle brokers to sell vehicles, and which may (or may not) sell parts to automotive-repair shops directly through their service centers or indirectly through other third-party vendors.[4]

Plaintiffs allege the cyberattack caused "interruption" to their business operations because they were purportedly unable to "obtain vehicles or finalize sales contracts" (DLR) and were "unable to order and obtain the parts necessary to complete scheduled vehicle repairs" (Smith and Broadway). *Id.* ¶¶ 43, 46, 47, 49. Plaintiffs do not allege that the cyberattack compromised their data.

Nor does the complaint allege any relationship between plaintiffs and CDK. Plaintiffs are not CDK customers. *See id.* ¶¶ 42, 46, 49; *compare id.* ¶ 37 (alleging that Manderbach Ford, a dealer, "contracted with CDK for CDK to provide a variety of dealer management services," that CDK in fact provided those services to Manderbach Ford, and that Manderbach Ford "paid for" those services; none of these allegations exist as to plaintiffs). DLR, for instance, claims to be a mere "intermediary" between car buyers and dealerships who may use CDK software. *Id.* ¶ 42.

---

[3] *See generally The CDK Dealership Experience*, https://www.cdkglobal.com/media-center/cdk-global-brings-digital-transformation-automotive-retail-new-category-software-cdk.

[4] *See generally* Kristopher J. Brooks, *3 Ways the CDK Cyberattack is Affecting Car Buyers*, CBS News, June 25, 2024, https://www.cbsnews.com/news/cdk-cyber-attack-ransomware-hacked-dealerships/.

Plaintiffs do not allege they had any interaction with CDK, made any payment to CDK related to vehicle purchases, parts orders, or otherwise—nor do they allege that they were even aware of CDK prior to the incident. *See id.* ¶¶ 42, 46, 49. While the complaint does allege that Manderbach Ford—a dealer whose claims the parties have agreed should be severed and proceed to arbitration—directly interacted with CDK and directly paid CDK for its services, *id.* ¶ 37, no similar allegations exist with respect to plaintiffs. *See id.* ¶¶ 42, 46, 49. Plaintiffs also do not plead facts showing how they are connected to CDK, such as (i) how they purchase vehicles from dealers, (ii) how they order parts, (iii) what dealers they use to purchase vehicles, (iv) what dealers they use to buy parts, and (v) what, if any, business information plaintiffs provide to dealers (and whether that information is even provided to CDK) as part of this process.

Nevertheless, on July 12, 2024, DLR, Smith, Broadway, and Manderbach Ford,[5] filed this putative class action on behalf of a class of "[a]ll automotive businesses in the United States who used or relied upon CDK Global's services and sustained interruption to their business operations as a result of the" cyberattack against CDK. *Id.* ¶ 51. The putative class action complaint alleges claims for negligence, breach of contract,[6] and unjust enrichment. *Id.* ¶¶ 61–87.

This putative class action is one of 15 pending putative class actions filed against CDK in this Court and relating to the June 2024 cyberattack. Of those cases, (i) ten involve consumer or dealer employee plaintiffs, and are now consolidated before this Court in *In re CDK Global Data*

---

[5] On October 25, 2024, the parties jointly moved to sever Plaintiff Manderbach Ford from the above-captioned case because the dispute between Manderbach Ford and CDK is subject to a contractual arbitration provision, and the parties anticipate proceeding to arbitration. ECF No. 28 ¶ 6.

[6] The breach of contract claim is asserted exclusively by "Plaintiff Manderbach Ford and the Class." ECF No. 1 ¶ 74–80. As explain in section III, *infra*, that claim should be dismissed because Manderbach Ford has agreed to sever its individual claims against CDK from this action and stay those claims pending a resolution in arbitration. Thus, the claim is no longer asserted by a proposed class representative. ECF No. 28 ¶ 6.

*Security Consumer Litigation*, No. 1:24-cv-05221; (ii) two involve dealer plaintiffs that should or will be moved to arbitration pursuant to a mandatory arbitration agreement in their contracts with CDK (*Fowler Buick GMC Inc. v. CDK Global, LLC*, No. 1:24-cv-05643, and *Formula Sports Cars, Inc. v. CDK Global LLC*, No. 1:24-cv-08120), (iii) two, including this one, involve business entities who are not dealers (*Jay Kay Collision Center, Inc. v. CDK Global, LLC*, No. 1:24-cv-05313 also includes a non-dealer plaintiff) and (iv) one that voluntarily dismissed.  CDK's contracts with its customers generally include a clear and conspicuous agreement to submit any disputes to individual arbitration and to waive the ability to participate in class actions for suits arising out of those contracts.  *See*, *e.g.*, CDK's Motion to Compel Arbitration, ECF No. 27*, Formula Sports Cars*, No. 1:24-cv-08120.

## LEGAL STANDARD

A court must dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) if the alleged facts do not plausibly entitle the plaintiff to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560–61 (2007).[7]  A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.  Legal conclusions "must be supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "[T]he plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586–87 (7th Cir. 2021).  And in a putative class action, the Court assesses only "the claims of the named plaintiffs, not those of the putative class."  *Oyoque v. DePaul Univ.*, 520 F. Supp. 3d 1058, 1063 n.3 (N.D. Ill. 2021).

---

[7] All internal quotations and citations have been cleaned up unless otherwise noted.  All emphasis has been added, unless otherwise noted as well.

## ARGUMENTS

### I.     The Negligence Claim Fails (Count I)

Under Illinois law, the elements of negligence are "duty, breach of duty, and causation." *Clifford v. Crop Prod. Servs. Inc.*, 627 F.3d 268, 271 (7th Cir. 2010). Plaintiffs' negligence claim fails because they do not plausibly allege facts showing that CDK owed them a duty of care or that CDK breached that duty. The negligence claim is also independently barred by Illinois's economic-loss rule.

#### A.     Plaintiffs Fail to Plausibly Plead that CDK Owed Them a Duty of Care

As a matter of law, plaintiffs have not alleged facts that would give rise to a duty of care from CDK. Plaintiffs' attempts to locate such a duty fail for a number of independent reasons. *First*, plaintiffs suggest that CDK owed a duty to ensure that CDK's software "stayed operational." ECF No. 1 ¶¶ 63, 66. But no such duty exists under Illinois law. For example, "Illinois has not recognized a duty of care owed by software designers to the users of their products," *Della Parola Cap. Mgmt. LLC v. Blaze Portfolio Sys.*, LLC 2021 WL 3674613, at *6 (N.D. Ill. Aug. 19, 2021), and this Court, sitting in diversity, must "take state law as it is rather than predicting novel developments." *Knight v. Enbridge Pipelines (FSP) L.L.C.*, 759 F.3d 675, 678 (7th Cir. 2014); *see also Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1020 (7th Cir. 2024). There is therefore no basis for finding that CDK has a duty to ensure that its software "stayed operational." *See Della Parola*, 2023 WL 3674613, at *6 ("Plaintiff admits that Illinois has not recognized a duty of care owed by software designers to the users of their products, but nonetheless asks this court to extend Illinois law and recognize such an obligation. Because I must take state law as I find it and cannot predict novel developments, plaintiff's claim fails."). Any such obligations

would be more naturally found in the contracts and terms that govern the customer-service provider relationship.

But even if CDK owed a common law duty to its *customers* to deliver functioning software, that duty would not extend to *plaintiffs*. Plaintiffs are not customers of CDK, and they have not specifically alleged that they directly use CDK's software. There is no common-law duty running to the world at large to provide software on a continuous basis and without interruption. *See Philadelphia Indem. Ins. Co. v. Bellin Mem'l Hosp., Inc.*, 2023 WL 6388208, at *14 (N.D. Ill. Sept. 29, 2023) (applying Illinois law) ("There is no common law duty for one company to install a software program for another company.").

**Second**, plaintiffs suggest that CDK owed a duty to protect their information. ECF No. 1 ¶¶ 63–65. There are several problems with that theory. For starters, Illinois has not recognized a free-floating, common-law duty of care to protect business data from a cyberattack. And again, this Court should not expand Illinois law. *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994) ("When given a choice between an interpretation of Illinois law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path (at least until the Illinois Supreme Court tells us differently).").

Although an Illinois appellate court recently recognized a common-law duty to protect individuals' *personal* information as defined by the Illinois Personal Information Protection Act ("PIPA"), that decision provides no support for the duty alleged by plaintiffs in this case. *See Flores v. Aon Corp.*, 242 N.E.3d 340, 354 (Ill. App. Ct. 2023). Plaintiffs have not plausibly alleged that they provided any *personal* data to *CDK*. Business information from automobile brokers and repair shops does not qualify as personal information under PIPA. *See* 815 ILCS 530/5. The public-policy considerations that support finding a common-law duty as to personal information

7

are not applicable to a business-to-business situation. *See Flores*, 242 N.E.3d at 354. Instead, those sorts of obligations would be defined by the contractual relationships that govern commercial actors—contractual relationships that are entirely missing from plaintiffs' allegations against CDK.

Even if Illinois recognized a common-law duty to protect non-personal information in the abstract, that duty would not arise in these circumstances. "It's well established that the touchstone of this court's duty analysis is to ask whether the plaintiff and the defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Anderson v. Chicago Transit Auth.*, 131 N.E.3d 1245, 1253 (Ill. App. Ct. 2019); *see also Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1097 (Ill. 2012). Illinois courts have recognized that whether or not the parties have a direct relationship is important to the analysis. *Simpkins*, 965 N.E.2d at 1097 (finding foreseeability was not satisfied and noting that the "defendant and plaintiff had no direct relationship").

The relationships between plaintiffs and CDK are simply too ill-defined and attenuated on the allegations in this complaint for a duty of care to arise. Plaintiffs are not customers of CDK. They do not allege any direct interactions with CDK. Instead, their claims depend on interactions with unidentified intermediaries, such as third-party dealers. ECF No. 1 ¶¶ 42, 46, 49. Further, plaintiffs also do not plausibly allege CDK ever possessed any of their data. Plaintiffs offer a vague allegation that "CDK Global collected sensitive information from Plaintiffs and Class members," *id.* ¶ 62, but offer no supporting allegations regarding when, why, or how CDK came into possession of the data of a third party like plaintiffs, with which CDK has no commercial

relationship and with which it has never interacted.[8]  *See generally* ECF No. 1.  Nor does the complaint explain how plaintiffs' purported data was sensitive to begin with.  This Court should reject plaintiffs' attempt to expand Illinois law to find a duty of care running from one commercial party to another, and especially where there is no meaningful interaction between the two.  *See, e.g.*, *Flaherty v. Wells Fargo Bank Nat'l Ass'n*, 623 F. Supp. 3d 1124, 1129 (D. Nev. 2022) (declining to impose duty of care where the parties had "no direct relationship" and plaintiff was a "non-customer" of the bank).

    *Third*, the true activity at the heart of the cyberattack is the illegal action of a criminal cybergang that attacked *CDK*.  There is generally no duty of care to protect against such third-party actions unless there is a "special relationship" between the parties.  The Illinois Supreme Court has recognized only four such special relationships: "(1) common carrier and passenger; (2) innkeeper and guest; (3) custodian and ward; and (4) landholder and member of the public who enters the land."  *Hankins v. Alpha Kappa Alpha Sorority, Inc.*, 447 F. Supp. 3d 672, 687 (N.D. Ill. 2020).  Plainly, none of these relationships are present here, and any attempt to create a new special relationship would have no basis in Illinois authority.

    *Fourth*, the remainder of plaintiffs' allegations are a mishmash of irrelevant points.  They allege that CDK owed a duty of care through unspecified internal policies and procedures and through CDK's public statements concerning the importance of cybersecurity.  ECF No. 1 ¶¶ 28–31.  However, "under Illinois law, a company's own internal policies cannot give rise to the type of legal duty necessary to support a negligence claim."  *Pearson v. Walmart Inc.*, 2021 WL 4477816, at *3 (N.D. Ill. Sept. 30, 2021).  Plaintiffs also allege that CDK had a duty to provide

---

[8]  It is likely that the "Plaintiffs and Class members" referenced here are the dealers, but those claims are proceeding into arbitration and will not be a part of this case or any putative class.

data security consistent with "industry standards." ECF No. 1 ¶ 65. However, there is no abstract duty to protect the whole world from a cyberattack. To the extent there is a duty to provide data security consistent with "industry standards," CDK does not owe that hypothetical duty to *plaintiffs* because there is no plausible allegation here that CDK ever possessed any of plaintiffs' data to begin with. *See generally supra*, p. 8. CDK must possess the plaintiffs' data before it can have a duty to secure that data consistent with industry standards.

Moreover, even if CDK possessed the plaintiffs' data *and* had a duty to protect said data consistent with "industry standards," the claim would still fail because the complaint fails to adequately define those standards. The standards referenced in the complaint are standards for the protection of *personal* information, not general business information. ECF No. 1 ¶ 33 (citing FTC guidance entitled, "Protecting *Personal* Information: A Guide for Business"). Thus, even if CDK owes the plaintiffs a duty to protect their information—which CDK does not, as stated throughout—the "standards" referenced in the complaint would not define CDK's duty because business information from automobile brokers and repair shops is not personal information. In all events, none of plaintiffs' claims are tied to the security of their data, but to the unavailability of CDK services to dealers following the cyberattack.

Plaintiffs finally allege that unspecified laws and regulations establish a duty of care. ECF No. 1 ¶ 67 ("CDK Global also owed a duty to Plaintiffs and Class members, by operation of statute to implement and ensure adequate data security practices."). To the extent that plaintiffs are invoking a statutory duty, they must, at a minimum, identify the statute. *See Roberson ex rel. Roberson v. Novartis Pharm. Corp.*, 2011 WL 1740137, at *2 (N.D. Ill. May 5, 2011) (dismissing negligence *per se* claim because the plaintiff "failed to identify a specific statute in the complaint that [the defendant] allegedly violated"); *Holler v. Cinemark USA, Inc.*, 185 F. Supp. 2d 1242,

1244 (D. Kan. 2002) ("[P]laintiff's generic complaint that defendant violated unspecified 'local, state and federal statutes, guidelines and regulations' does not provide fair notice of his claim.").

The only statute that plaintiffs reference is the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a). But the FTC guidance referenced in the complaint speaks about protecting *personal* information, not business information. ECF No. 1 ¶ 33 (referencing a 2016 FTC publication entitled "Protecting *Personal* Information: A Guide for Business," which notes that "businesses should protect the *personal customer and consumer information* that they keep" and "properly dispose of *personal information* that is no longer needed"); *id.* ¶ 35 ("The FTC has brought enforcement actions against businesses for failing to adequately protect confidential *consumer* data . . . ."). Plaintiffs offer no basis for finding that the FTC Act imposes a duty on CDK to protect non-personal business information. Moreover, federal statutes that do not include a private right of action—like the FTC Act—do not support a duty in negligence. *See In re SuperValu, Inc.*, 925 F.3d 955, 963–64 (8th Cir. 2019); *Stewart v. Jeffreys*, 2021 WL 1379420, at *4 (S.D. Ill. Apr. 12, 2021). And a cause of action should not be implied where the FTC Act is properly effectuated through the enforcement scheme created by Congress and, to the extent the Illinois legislature deems fit, through state statutes that have not been invoked and are inapplicable here. *See In Re SuperValu, Inc.*, 925 F.3d at 964 ("Implying a cause of action would be inconsistent with Congress's anticipated enforcement scheme. . . . We conclude that Illinois is unlikely to recognize a legal duty enforceable through a negligence action arising from the FTCA."). Finally, even if plaintiffs offered a basis for finding that the FTC Act imposes a duty on CDK to protect non-personal business information, plaintiffs' claim would nevertheless fail because (again) any such duty would not run to *plaintiffs*, which had no interactions and provided no data to CDK.

11

### B.     Plaintiffs Fail to Sufficiently Plead Breach of Duty

Plaintiffs also fail to plausibly allege that CDK breached any duty of care.  They allege CDK breached its duty by vaguely asserting that CDK failed "to provide adequate data security to safeguard its systems."  ECF No. 1 ¶ 68.  This single, unsupported factual allegation is insufficient to show breach.  Plaintiffs treat their negligence claim as though it can proceed under *res ipsa loquitor*: since a cyberattack occurred, CDK must have been negligent.  But plaintiffs must "plausibly allege not only that there was a data breach, but that the breach was caused by [defendant's] unreasonable conduct."  *In re Waste Mgmt. Data Breach Litig.*, 2022 WL 561734, at *5 (S.D.N.Y. Feb. 24, 2022).  It is not enough to simply put forward bald allegations that CDK failed to implement "reasonable security measures."  ECF No. 1 ¶ 64.  Plaintiffs must allege acts regarding specific security measures that CDK did or didn't implement. *See In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (plaintiffs must allege in more than conclusory terms that the defendant failed to take reasonable measures to protect the data ); *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717–18 (8th Cir. 2017) (similar).  Plaintiffs have not done so: they do not assert any specific security measures that CDK allegedly failed to follow, or how any such alleged failure caused the cyberattack.  That is insufficient.

Finally, and perhaps most importantly, plaintiffs do not allege anywhere in the complaint that their information was lost, compromised, or accessed by cybercriminals during or after the cyberattack.  CDK therefore could not have breached any alleged duty to protect plaintiffs' information, even assuming such a duty exists.

### C.     The Economic-Loss Rule Bars Plaintiffs' Claim

Plaintiffs' negligence claim must be dismissed because it is barred by the economic-loss rule.  Illinois law is plain: "a plaintiff seeking to recover purely economic losses due to defeated

expectations of a commercial bargain cannot recover in tort." *In re Chicago Flood Litig.*, 680 N.E.2d 265, 275 (Ill. 1997); s*ee also Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 817 (7th Cir. 2018). And this is true even if the particular plaintiff in the particular case suffers from the "inability to recover under an action in contract." *Anderson Elec, Inc. v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 249 (Ill. 1986).

The complaint makes clear that plaintiffs seek to recover precluded economic-loss damages. They claim that they sustained injury and damages for "lost earnings." *See* ECF No. 1 ¶ 40; *see also id.* ¶ 3 ("monetary losses"); *id.* ¶ 23 ("unable to timely process hundreds of millions of dollars in sales and services"); *id.* ¶ 25 ("significantly reduced new vehicle sales"); *id.* ("substantial financial losses"); *id.* ¶ 44 ("economic damages, including lost earnings from vehicle sales"); *id.* ¶ 47 ("interruption of [ ] business operations, including loss of fixed operating costs and losses related to its inability to fulfill service requests"); *id.* ¶ 50 (same). These are quintessential economic losses. *See Chicago Flood*, 680 N.E.2d at 274 (economic losses include "consequent loss of profits").

And it is undisputed that plaintiffs' claims arise out of the defeated expectations of an alleged commercial bargain. *See* ECF No. 1 ¶ 23 ("The Data Breaches forced Defendant to shut down its servers and services, depriving plaintiffs and Class members access to critical software and information necessary to run their businesses."); *id.* ¶ 24 (claiming that losses occurred because CDK's customers were "[d]eprived of access to CDK Global's services"); *id.* ¶ 37 (alleging that CDK provided services to Manderbach Ford pursuant to a contract). That plaintiffs themselves may not have had a contract with CDK is immaterial. The economic-loss rule bars recovery where the claim lies in the disappointment of a commercial bargain between the defendant and *someone* (here, presumably the dealers with which plaintiffs interact). *See Chicago*

*Flood*, 680 N.E.2d at 268–69 (plaintiff businesses could not recover from the disappointment of a commercial bargain between Chicago and construction services contractor); *Admiral Indem. Co. v. Otis Elevator Co.*, 2021 WL 4306145, at *1 (N.D. Ill. Sept. 22, 2021) (tenant could not recover for losses arising from the disappointment of a commercial bargain between building owner and elevator manufacturer). Here, there are contracts between CDK and its direct customers, who, in turn, would have contractual or other relationships with plaintiffs. That is sufficient to bring the economic-loss doctrine into play.

Recently, in *Flores v. Aon Corporation*, the Illinois Appellate Court concluded that individual consumers could proceed with a negligence claim for economic injuries arising out of the exposure of their personal information in a data breach. *See* 242 N.E.3d 340, 361. *Flores* does not provide support for plaintiffs, however. First, in *Flores*, plaintiffs "allege[d] that they provided defendant with their personal information, including their names, social security numbers," and other sensitive data. *Id.* at 349. No plausible allegation as it relates to plaintiffs is in this complaint. Second, *Flores* found that the Illinois Personal Information Protection Act (815 ILCS 530/1 et seq.) created an extra-contractual duty under state law to protect sensitive personal information. *Id.* at 353–54; *see also* 815 ILCS 530/5 (protecting PII alleged by the *Flores* plaintiffs). As discussed above, plaintiffs here—one automobile broker and two automotive-repair shops—do not plausibly allege their personal information ("PII") was provided or taken in this case, which would be nonsensical as applied to a business entity. The economic-loss rule applies to plaintiffs' negligence claim and therefore it should be dismissed.[9]

---

[9] To the extent *Flores* could be read to suggest that parties must have contractual privity to apply the economic-loss rule, Illinois Supreme Court precedent makes clear that privity is not required. *See Chicago Flood*, 680 N.E.2d 265, 268–69 (Ill. 1997) (applying the economic-loss rule to bar tort claims between

## II. The Unjust Enrichment Claim Fails (Count III)

Plaintiffs fail to plead facts plausibly alleging CDK was unjustly enriched in connection with the June cyberattack. "To state a claim for unjust enrichment under Illinois law, a 'plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience." *Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1166 (N.D. Ill. 2022).

***No benefit conferred by plaintiffs.*** Plaintiffs allege CDK was unjustly enriched because "Plaintiffs and Class members conferred a benefit on CDK Global by directly or indirectly paying it money for services rendered." ECF No. 1 ¶ 83. In the first instance, plaintiffs fail to plausibly allege that they ever made a payment for anything to CDK. *See Hayes Mech., Inc. v. First Indus., L.P.*, 812 N.E.2d 419, 426 (Ill. App. Ct. 2004) ("[T]he plaintiff must show that valuable services or materials were furnished by the plaintiff, received by the defendant"). The complaint alleges that Manderbach Ford—a dealer—made payments to CDK for services, ECF No. 1 ¶ 37, but the complaint contains no similar allegations with respect to plaintiffs.[10]

In any event, plaintiffs could not allege that they paid CDK for services. Plaintiffs are not CDK customers. They either pay dealers for parts or get paid by dealers for helping to broker vehicle sales—they do not get paid by or pay CDK. *Id.* ¶¶ 42, 46, 49. Without any plausible allegations that CDK received a direct financial benefit from plaintiffs, under Illinois law, the

---

entities not in contractual privity, where the claims arose out of the defeated expectations of defendant's commercial bargains).

[10] Because plaintiffs do not allege that they ever made a payment to CDK for anything, the payment allegation in paragraph 83 is a class allegation. However, such class allegations cannot be considered when deciding whether plaintiffs have stated a claim for unjust enrichment. *See Oyoque*, 520 F.Supp.3d at 1063 n.3 ("Because a class has not been certified, at this point the Court assesses only the claims of the named plaintiffs, not those of the putative class.").

unjust enrichment claim fails. *See*, *e.g.*, *Rehabcare Grp. E., Inc. v. CC Care, LLC*, 2016 WL 2595108, at *7 (N.D. Ill. May 4, 2016) (dismissing unjust enrichment claim because plaintiff "does not allege what benefit [defendant] unjustly retained," and observing also that plaintiff "does not allege that it provided any services to [defendant]").

And to the extent plaintiffs attempt to assert their claim should survive due to conferral of some "indirect[]" financial benefit on CDK, *see* ECF No. 1 ¶ 83, plaintiffs still fail to allege facts necessary to plausibly show that the purported "indirect" benefit was actually conferred—e.g., the amount, what for, how it enriched CDK unjustly, or how such "indirect" benefit traveled from themselves to CDK. *See id.* ¶¶ 42, 46, 49. Regardless, these sorts of "indirect" financial benefits are not supported under Illinois law except under limited circumstances not invoked here. *See*, *e.g.*, *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989) (describing exceptions as when "the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead;" was taken from the third-party through "wrongful conduct;" or the plaintiff had a "better claim to the benefit" than defendant).

***No separate cause of action.*** "[U]nder Illinois law, unjust enrichment is not a separate cause of action." *Solar Micronics, Inc. v. Reddy*, 2023 WL 4564566, at *6 (N.D. Ill. July 17, 2023) (Cummings, J.). Instead, the Seventh Circuit has "held that 'if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim.'" *See Platt v. Brown*, 872 F.3d 848, 853 (7th Cir. 2017). Where, as here, the unjust enrichment claim is premised on the same conduct as the negligence claim, it cannot stand alone.

### III.  The Breach of Contract Claim Must Be Dismissed (Count II)

The breach of contract claim must also be dismissed because the claim is no longer asserted by a proposed class representative.  Plaintiffs do not join Count II, which is asserted exclusively by "Plaintiff Manderbach Ford and the Class." ECF No. 1 ¶¶ 74–80.  The parties have jointly moved to sever Manderbach Ford from the instant case, *see* ECF No. 28, leaving only "the Class" to bring Count II.  The proposed class has not been certified, and an uncertified class cannot advance a claim without a class representative.  *See Fullerton v. Corelle Brands, LLC*, 2019 WL 4750039, at *3 ("[I]f the claims of the putative class do not have a class representative to assert them, those claims must be dismissed.").

### IV.  CDK Reserves Its Right to Compel Arbitration and Invoke Any Class Waiver

At this time, CDK lacks sufficient information concerning plaintiffs' claims to assess whether they are subject to arbitration or other contract-based defenses.  *See Coatney, LLC*, 93 F. 4th at 1019 (finding non-signatories may be compelled to arbitration under the doctrines of "(1) assumption, (2) agency, (3) estoppel, (4) veil piercing, and (5) incorporation by reference").  For the reasons described above, the Court should dismiss plaintiffs' claims under Rule 12(b)(6).  If, however, plaintiffs' claims—ill-defined as they are—survive this motion to dismiss and discovery reveals facts that the claims actually arise out of contracts that contain arbitration clauses or class-action waivers, CDK fully intends to invoke such provisions.  *See Hughes Masonry Co., Inc. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("[P]laintiff cannot have it both ways.  It cannot rely on the contract when it works to its advantage, and repudiate it when it works to its disadvantage.").

## **CONCLUSION**

For the foregoing reasons, plaintiffs' class action complaint against CDK should be dismissed with prejudice.

DATED: October 30, 2024     Respectfully submitted,

/s/ Devin S. Anderson
_____

Devin S. Anderson (*admitted pro hac vice*)
Haley L. Darling (*admitted pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: (202) 389-5000
Facsimile: (202) 389-5200
Email: devin.anderson@kirkland.com
Email: haley.darling@kirkland.com

Martin L. Roth, P.C.
IL Bar No. 6296464
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
Tel: (312) 862-7170
Facsimile: (312) 862-2200
Email: martin.roth@kirkland.com

*Counsel for Defendant CDK Global, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 30, 2024 a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF CDK GLOBAL, LLC'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT** was electronically filed with the Court via the CM/ECF system which sent notification of such filing to all Counsel of Record.

Dated: October 30, 2024

*/s/ Devin S. Anderson*
Devin S. Anderson